Next case is MORRIS v. MOODY, number 2010-1329-1363. Who will be arguing the case, Mr. Pittman?  I will be arguing the first nine minutes. Mr. Lee will be arguing the next five primarily on the issues of statute of limitations and equitable tolling. We're reserving one minute for rebuttal. Before we get started on this matter, I believe the court has a few words to say about civility in a courtroom. I think it's very, very important for attorneys who happen to be officers of the court to conduct themselves in such a manner that at least the record would reflect that they accept each other in the courtroom and outside of the courtroom. No confrontational basis does not exist and should not be part of the record. And if we read this record, there's a number of issues that could be confrontational and very much out of order with respect to the treatment of the attorneys with each other. I think you can represent your clients to the best of your abilities and be very, very presented in a fashion that is very difficult issues, but you don't have to have difficulties among yourselves. I think it's very, very important to maintain civility in all of our practices, especially since lawyers are officers of the court. And I would like to keep that in mind as we go along. Certainly, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Your Honor, if I may have you. Mr. Pittman, whenever you're ready. Your Honor, with the indulgence of the court, I'd like to remain seated. I'm suffering from incredibly painful sciatica. Whatever makes you feel comfortable is on you to present your case. Thank you, Your Honor. Is the sound level okay? Your Honor, there are four main points I would like to stress here today. One is that under the patent infringement claim, there is at least one example of the burping pig in Episode 2 of the Joint Appendix Supplement DVD, in which all of the elements of Claim 1 of the 136th Patent at JA 205 are present and is reflected in the claim in numerous of the figures whereby the pig makes a sound, and the written words appear next to the mouth. And this is identical, if you would observe the use of read-speak in the Mr. Word Wizard DVD, which has also been submitted. The argument against that has been made that it is a de minimis violation that is not only not supported by case law, but I found anyway. Well, Mr. Fitlow, you can assume that we are familiar with the record and the documents which have been submitted. Where did the district court below commit reversible error? They committed reversible error because they asserted that there was no presentation of an example of infringement, and it is my belief that they did not observe that example. What evidence did they dismiss that was not reviewed by the court? The assertion was that there was no example given of an infringement, that none of the word-world evidence that we attached to the amended complaint constituted an infringement, and I am now pointing out to you the one example that is a clear infringement. On the copyright issue, was there any submission of evidence by you on the issue of claim construction? Is how the claims of the Patent 136 were to be interpreted and construed? I just asked for the application of the terms of the claims. There really isn't anything that requires a great deal of construction, for instance, in the Birkin-Pig example, because the elements of the first claim of the first patent, the 136 patent, requires that you have an utterer, that you have the contiguous presentation of the word appearing shortly after the utterance is made, and that is present in that example. I don't think there was any contention by Judge Rakoff that there was an issue regarding claim construction. I believe it was a complete assertion that there was no violating material in the exhibits presented, which were extensive. It was essentially all of the episodes, I believe there were 26 at the time, of word-world that was extant at that time that were attached as exhibits. In an oral argument, at the point in time, we had gone through numerous issues. You know there are many, many claims. When I was about to get to that example in my PowerPoint presentation, he decided he had heard enough. So he never got to see me bring that example in front of him, and I believe that was an omission in the court below. But even as you're describing it, you had 26 exhibits, all of their programs, and you came up and you have one example there where they used captioning. That's the one example in all of these exhibits and all of these programs. That's the most egregious example. The device that was used to try and evade the patent was that when the characters are called into existence in the program, they are spelled out. If there would be an utterer present, then it would absolutely apply to the formation of the entire series, and because Claim 15 of the 136th Patent establishes that that image can have the form of a pictogram, you would then have a violation of the Claim 1. Now, that is not present. In the interpretation of the claims that I put forward in the brief here, I noted that in the specification there is a discussion that in certain instances the utterer does not have to be present on screen. In some instances, for instance, in the presentation of it for a blind person, it would make no sense, but they do describe utilizing Braille to accomplish the same thing. You would then have no utterer. You would simply have the Braille presentation. And from that… You mentioned there were four issues that you wanted to present. Yes, the next one is the copyright issue, which examines the specific creative expression concept to which the countervailing point is well-to-trademark. I think it would be pretty well understood by taking that perhaps more exaggerated example, where if you copied the sentence, tomorrow is another day, from the Mitchell Civil War saga. That, I think one could agree, if you're trying to apply it as a trademark to anything, would be violating the copyright in that book, Gone with the Wind. Here you have exactly the same situation. And I ask you to remember that you have… You have complete access to all of the intellectual property of both Reed Speak and Kyle Morris in the hands of the defendants. And in the initial tape, Mr. Word Wizard, this phrase was prominently used, written by Kyle Morris, of where words come alive. It was taken even though the purported separation agreement, which we think is avoidable. So even if it were accurate, that is supposed to be assigned back to Kyle Morris. And yet it is taken and used throughout all of the Word World presentations. Do you have two more points? Yes, the other two, very quickly, is that the same… Is that the omission… And I'll try and hit the trade secret issue here just very quickly. The trade secret word and object issue is word things. The word things are the physical embodiment of one manifestation of that concept. The other is the use of the word things in the show. At no time was there ever an assignment of that concept by Kyle Morris or Reed Speak to PPI. It was taken without their permission, secretly, and used. This is essentially complete theft. It was then hidden from view, as was noted repeatedly in the allegations in the complaint, that there was a program of keeping these things secret. And your fourth point? The fourth point is that while some of these claims may not meet the well-pled complaint requirement, the facts are present in each case, so that a valid claim could be created, certainly for the vast majority of the claims. And we would ask that if you find that the federal question jurisdiction fails because the federal claims do not stand, that we then be allowed to leave to replete within 30 days in state court. Thank you. Mr. Lee? Thank you, Your Honor. Before I start, I want to thank the panel for allowing me to appear today and apologize in advance for my speech. I had an accident in which I lost a tooth this morning. May it please the Court, I'd like to begin by picking up on a point that Mr. Fidler just left off on. I'm going to address primarily state court causes of action, in particular Judge Rakoff's misapplication of the equitable tolling doctrine to those claims. One of the things we would like to request is, in the event that the decision is not reversed on any of the federal claims, that the case be remanded for Judge Rakoff to decide whether or not to exercise supplemental jurisdiction, and if he does not, to allow us to replete in state court within 30 days in accordance with Section 1367 of Title 28. To begin with, it's important to remember that this was a motion to dismiss, not a summary judgment motion, so we're operating under the Twombly and Iqbal standards, although Iqbal was decided after Judge Rakoff's decision in this case. Am I correct in that you've already amended the complaint once? That's correct, Your Honor. It's a good question for exactly this reason. With all due respect to my colleague, Mr. Fidler, the amended complaint is, I'm not sure I would say it's short and plain, in accordance with Rule 8. It's clearly not short. It may be disorganized. It may be in some places difficult to follow, but the standards under Twombly and Iqbal require the court to look to the factual allegations. It's not about how well organized they are or how well written they are or whether they're under the right headings. In fact, it even says that the court is not, a complaint cannot be saved by headings and formulaic recitations of fact. We would submit the reverse is also true, that if the factual allegations are present to support a claim, that it would be appropriate to sustain the complaint or to allow them to be repleted perhaps in a more coherent fashion. The court is not required to go through your complaint and selectively try to make your case. You have to plead your case properly so that the court will be able to understand what the complaint is and the defendants will be able to understand it. How many bites of the apple do you think you're entitled to? Well, I agree with the statement and I guess my answer would be I think we're entitled to one more bite of the apple, at least on the state law claims, because there was an error of law and clearly erroneous factual findings specific to those claims. First of all... Well, you can't have a fairly erroneous statement that has nothing to do with it, because it's a dismissal. There's no fact finding here. Well, Judge Rakoff based his dismissal on the wrong rule of law, first of all, and on facts that were beyond the complaint, and upon, he stated in one point, for example, he said that there are no allegations in the complaint that he says the amended complaint fails to allege that the Morris parties were unaware of certain highly public activities that he refers to until Word World premiered in September 2007. But the amended complaint specifically says that the plaintiffs were unaware of those activities in at least four or five different places, and they're cited in the reply brief. I could give you the paragraph number. So the point is this is a motion to dismiss. It needs to be based on the allegations in the complaint, and if there's a factual allegation made that is not merely conclusory, it needs to be assumed to be true. Here the judge said not only did he not assume them to be true, he said the allegation's not there, when in fact it is, and those allegations are cited on page 26 to 27 of our reply brief. The judge also found, along the same lines, that he based his decision on four facts that he specifies, which are cited on page 21 of our reply brief, that either were not in the amended complaint, based on matters outside of the amended complaint, or were specifically alleged in the amended complaint as having been hidden. And I note the Chambers v. Time Warner case 282 F. 3rd. 147 and Cortec 949 F. 2nd. 42 that says that in order for a document to be considered on a motion to dismiss, it needs to be relied upon in an amended complaint. Mere notice or possession is not enough. I see I only have 20 seconds left, so I want to just get to the important legal point. Judge Rakoff said that the plaintiff's failure to bring their claim within one year of when that pilot episode aired, which is when they said they discovered these actions, was essentially, as a matter of law, defeated the equitable tolling doctrine. But under New York law, Civil Practice Law Section 203G specifically states that for equitable tolling, the period is two years. And the courts have said, including the First American Title case of the Southern District of New York, 2008, Westlaw 282. 091, and the other cases cited in our brief, that there's a distinction between equitable estoppel, in which you can apply a reasonable standard, and equitable tolling, in which Section 203G provides for two years, for state law claims. Thank you, Mr. Lee. I'll save you a one-minute rebuttal. If I still have it, I thought I was down to my last 30 seconds. But yes, thank you. I came on 30 seconds ago. Okay, thank you. But we will give you one minute for rebuttal. I appreciate it. Thank you. Mr. Newberg. Thank you. May it please the Court. First, I want to say that I appreciate what the Court said this morning, and I want to specifically apologize for any incivility that the Court deemed in my papers. Unfortunately, this case has been marked by not only vitriol, but hyperbole that has continued... Let's get down to it, okay? I think you're sort of treading by in the area that Judge Garza tells you to avoid. Right. No, I just wanted to apologize. Let's talk about that. Sure. Look, there are problems that strikes me with the statute of limitations holding here. First of all, as I understand it, the statute of limitations is affirmative defense, so I find it a little questionable whether the Court can rule for you on the statute of limitations issue based on what's alleged in the complaint when we're dealing with an affirmative defense. How can that be? How can he say, oh, well, the statute of limitations is run because the complaint doesn't say this or doesn't say that or doesn't say the other thing? Doesn't that have to be done based on a motion where the facts are brought in rather than relying on the complaint? Well, Your Honor, actually the statute of limitations is an incredibly common grounds for a motion to dismiss when there is in the complaint... I understand, but in terms of statute of limitations, you can't just look at the allegations of the complaint because it is an affirmative defense. Am I wrong? I believe, respectfully, you are, Judge. I believe that the complaint states facts in it that specifically say when all of the events occurred, when they knew about them, how they knew about them, what the various allegations are for. We held that because the complaint failed to allege lack of knowledge, and that's a question as to whether it does or doesn't, but let's assume for the moment that it did fail to allege lack of knowledge, but the failure of the complaint to allege something which is relevant to the statute of limitations can't be a ground for dismissal without the additional opportunity for affidavits, can it? It was not just the failure to allege lack of delay in the complaint. It was, first off, as you know, we're dealing with a 77-page, 47-exhibit complaint. But the basic point is you cannot dismiss on statute of limitations because of failure of allegations in the complaint. Is that not correct? Well, yes, yes. On that statement on its own, I believe it's a yes, but, Your Honor, but on that statement alone, the answer is yes. The statute of limitations here, because everything was laid out and they were given a chance to amend, and they specifically said that things are waived out, the statute of limitations bars all our claims absent equitable tolling, and then the court went through and asked them about it, and they were given two rounds of briefing to explain the delay, and they weren't able to, that the court dismissed on those grounds. He gave them every opportunity with two rounds of briefing, two oral arguments, and two full complaints where they could allege things, and it's not just... But didn't they allege lack of knowledge in the complaint? No, in fact, the complaint is very specific on their knowledge. The complaint alleges not only, and I'll refer the court to their, even though it's regarding a complaint, part of a claim that was dropped, their misrepresentation claim, which is why I'm not sure it's in the appeal, but at pages 62 to 67, the Morris parties supposedly recall the appellants as they state, quote, the most significant events giving rise to their claims. Or the court can look at paragraph 126 of the amended complaint, which they break up into 17 subparagraphs over six pages. Every one of these allegations, as they state and the court found, occurred more than six and a half years before the filing of the complaint. But they were not only known by the Morris parties, but they're the things, as the Morris parties go through them, that caused the discord of the parties and led to their breakup and separation agreement, and the allegations are specifically, we had a disagreement about this. Morris was angry about this in 2001. So it specifically states that they knew at the time, and then further in their complaint in their papers... Let's leave that aside for one moment. His other ground is they didn't file within one year, and they say that under New York law, it's two years. Are they correct about that? They are not correct about that, but if I could break that into two statements. First, because this was not brought up until the final oral argument, because they specifically said, we have waived this statute of limitations, it's all barred under it, absent equitable tolling, as opposed to this New York two-year rule, the judge found that when they brought that up at oral argument, and admitted that was a new argument, in fact, the judge gave them a chance, says, is this under your equitable tolling? They said no. Is it true that the New York statute gave them two years? The New York statute would give two years from the date that they should have discovered it, if they can prove, and the case says, that they must show that there was no way, no diligence that would have shown that they could have found out about their facts. And they allege that they not only knew them, but that Word World was open and notorious, giving national news conferences, and getting what they called a highly publicized... So it's not two years after discovery? It's not two years after discovery, it's two years after they should have discovered, and they must show that they could not have discovered with due diligence, and that the defendants were the ones who were preventing them from discovering. But the judge's theory of one year, then, is inconsistent with the statute. That's not true, because they specifically said, it's the equitable tolling, which isn't one year, it's a reasonableness standard, which all the cases, and we cited them, say... But if we apply the New York statute, forget about equitable tolling, if we apply the New York statute, it isn't one year, it's two years, right? It would be two years from the should have discovered, yes. Now, let me ask you another question. Sure. With respect to the breach of fiduciary duty, which in some ways seems to be the heart of this, the judge said, oh well, that claim on the merits, passing over the statute of limitations issue, is barred because there was this separation agreement, correct? That's... It was because there was a separation agreement, they also... They said that it was, in their argument, they said what it was really about was a candidate, a professional, a professional candidate that was never actually in the complaint. The district court said it's because of the separation agreement, right? I believe that's correct, Your Honor. Okay. But in fact, ReadSpeak, which is one of the clients here, did not sign the separation agreement, right? ReadSpeak did not sign... That's right. There was no, because there was no... Is that a mistake? There was no relationship. Isn't that a mistake? No, it's not. There was no relationship, because there wasn't a relationship between ReadSpeak and the parties. He specifically dismissed one of the accounts because he said there's actually no agreement that would lead to a breach between the defendants and ReadSpeak, and then he found that Morris had waived anything when he did the separation agreement. When he gets to the breach of fiduciary duty, he says it's one because the plaintiffs signed the separation agreement, but ReadSpeak was one of the plaintiffs on the breach of fiduciary duty did not sign the agreement, right? ReadSpeak did not sign a separation agreement. That is correct. That's right. That is correct. So that ground is not correct. Is that right? If that's what the court actually said, then that would be correct. But there is no actual fiduciary duty that is claimed between ReadSpeak and the defendants. It's between Morris and the defendants. So there is something that was on behalf of ReadSpeak against two of the defendants, Friedman and Shube, that they said that they should have filed their fiduciary duties, but there was no complaint, there was no facts in the complaint that said what the fiduciary duty was or how Friedman or Shube possibly violated this. And so the court really focused on the Morris claims, which were waived by the separation agreement. So the ReadSpeak claims were against two of the defendants specifically, but they gave no, in the amended complaint, they gave no allegations of what the fiduciary duty was or how it was violated. And the separation agreement was signed between Morris and the defendants. So the judge made a mistake, but you say it doesn't matter because there was no allegation about fiduciary duty. If the judge specifically stated that there was disagreement, then yes, that would be, between ReadSpeak and the defendants, that would be a mistake. If there was the specific separation agreement, yes, that would be a mistake. But I would obviously say that that would not be a difference that made a difference, and the judge gave many different reasons for his various dismissals. If I could go back to the, if I can, to the patent claims, since I wanted to address some of the things that Mr. Fidler stated. First off, I would state that the argument that this infringement is so-called de minimis, that Mr. Fidler said, that was never argued by us, and it's not part of the district court's opinion. The district court's opinion is that there is a, quote, fundamental difference between a captioning system where the written word needs to come up every time someone speaks and follows the mouth as they speak, and you can see it, so you can associate each word utterance with the written word, is nowhere to be found in WordWorld, and it's simply night and day. There's absolutely no captioning system used by WordWorld whatsoever. But in the record, there's no comparison between the claims of the patent and the alleged infringing items. There is, there is, actually. The amended complaint spends many paragraphs on that. The amended complaint specifically says, here's a claim, here's how we say it is infringed, only what they do is they basically just parrot the claim. They say the claim says this, WordWorld, the entirety of WordWorld infringes it by doing this, and that's in about the paragraph 90s of the amended complaint. But there's no comparative analysis done between the elements of the claims and the elements of the alleged infringing product, except in the complaint itself, which really is not a comparative analysis, it just says basically the claim says this and the product is this, so it's infringed. And it points to the WordWorld episodes itself to say, look at this, here they presented all of the WordWorld episodes, and they said this is an infringement. And the judge was able, Judge Rapop, was able to properly look at this and say, whether it's under Iqbal or Trombley or this Court's own opinions on patents that have absolutely nothing to do with the alleged infringement, it was able to say on its face it was implausible. So why isn't the Burke example an infringement? Well, the Burke example was one single frame. First off, Mr. Fidler said it's claim 136, claim 1. Let me first state that that was in the initial complaint, and when given... Okay, because it's not in the complaint anymore, just so we're aware. It's not in the complaint? Patent 136, claim 1. It's not in the complaint. They voluntarily withdrew that when they were given leave to amend any way they saw fit. Well, let's suppose it is in there. Supposing it is in there, okay? The Burping frame is literally, the Burping pig is, the WordWorld universe is, every object is made up of the letters, so the dog is the letters D-O-G in the shape of a dog, and so on. In this one instance, a character burps, and an animator imagined what a burp object would look like and literally wrote the letters B-U-R-P and formed them into the shape of a burp. That's it. That's the entire thing of what they're saying. Now, at page 18 of our brief, we specifically, because we wanted to cover all bases, talk about what the initial, what the 136, claim 1 patent was. We list the five limitations. It literally is, like I said in the brief, like comparing a car engine to a baseball. There's not a single one of these limitations that is in that Burping pig frame or WordWorld. Which limitation is not satisfactory? There's no series. It starts by saying a series of word utterances. We're literally talking one word, burp. By at least a series of word symbols, not there, one corresponding to and associable with each such word utterance, capable of teaching the viewer-listener to the visual appearance of the other word, appearing adjacent to the head of the utterer, appearing briefly in such frames at the same time the word utterances are heard, so each series, the whole series, each utterance and each corresponding word symbol are associable at the same time as listened, and then lastly, visually appearing in a frame alone, not without the dog in the cloud, etc., but alone, so when the viewer-listener hears an utterance, he or she can see only the corresponding word symbol and no other word symbol, which they say all the pictograms of the dog and the cloud, etc., are these word things, the word symbols. So, this is very different from a typical motion dismissed on implausibility because... Because the burp episode doesn't infringe because it's not a series. It's not a series. It's not there on its own with no other symbols or word symbols. It does not appear right next to the head of the utterer as it's coming from the mouth. It's up in the air that just there's a B-U-R-P formed in the shape of a word, formed in the shape of an imagined burp, just like the cloud was, etc. Again, as you pointed out, this is one single frame in the entirety of WordWorld's dozens of episodes. I want to also say that this is a little different from a typical implausibility argument because usually they didn't give enough to put a defendant on notice. Here's the reverse. 77 pages, 47 exhibits, they gave the court absolutely everything it needed to decide implausibility on the face of the complaint.  there are tons of examples of cases where a plaintiff submits the copyright work and the alleged infringement and courts decide at 12B6 motion dismiss stage that there's no substantial similarity because you can look at the work, look at the alleged infringement, and say there's no infringement here. I have a couple of things I wanted to address, but I do see that my time is out. Well, I just wanted to say on the copyright issue, the where words come alive is obviously it's a short phrase and the copyright statute clearly says it's not copyrightable. They've never attempted to make copyright on it. Mr. Fidler said tomorrow is another day, how no one can copy it. I propose to the court that tomorrow is another day could easily be a trademark for anything and submit that if any TV show wanted to say tomorrow is another day in a line on a show this evening, it could and would never be considered a copyright infringement or registered as a copyright by itself. Short phrases are simply not copyrightable. And the idea that they have in their brief that the teaching methodology or because their pilot was about learning to share and there are a couple of word world episodes are also about a sharing premise. Those things are completely not copyrightable ideas. Mr. Fidler said on trade secrets, he talks about something taken by word world, word things, but as the court found, there's no allegation of an actual trade secret. A marking idea under law cannot be a trade secret and there's no allegation that there was ever anything of this nature used secretly and continuously in the plaintiff's, the appellant's business. And so the only last thing I'd say is that Mr. Lee said that Judge Rakoff ignored the alleged facts and as I've said before, because of the enormity of this complaint, he actually relied on all of that. And so thank you very much. Thank you, Your Honor. Let me start, I guess, by saying I think the court is exactly right about the statute of limitations questions. I just want to point out that in response to the argument that the plaintiffs never brought up the two-year limitations point, that the cases cited in our reply brief between pages 21 to 27 specifically say that the doctrine of equitable tolling is subsumed within Section 203G. They're one and the same. Equitable tolling was always asserted in response to the statute of limitations argument. Next, with respect to the separation agreement, I just would like to point out counsel stated that, well, step back, Judge Rakoff's decision on Reed Speaks fiduciary duty claim is, on page 12 of his opinion, based exclusively on the release of the separation agreement. He did not find, as counsel suggested, that there were no allegations in the complaint about a relationship. The opinion doesn't say that, so it's not a basis for this decision, and I submit that it's not true. With respect to the separation agreement, I would also like to point out that the release, it says that the defendants, nothing in the agreement prevents the defendants from selling products that incorporate words into physical structures. Physical structures are not the same thing as animation, and an animated character, like a cat or dog in the shape of the word cat or dog, is not a physical structure, and in fact, those precise animated characters are included in the plaintiff's materials and are alleged in paragraph 126.0 of the complaint. Thank you, Mr. Lane. Thank you very much. The case is submitted. Thank you, Your Honor.